IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEFFREY KROTINE,                                )        CASE NO.  1:07CV1559
                                                )
                        Plaintiff,              )        JUDGE NUGENT
                                                )
            v.                                  )        MAGISTRATE JUDGE HEMANN
                                                )
                                                )
CUYAHOGA COUNTY, OHIO, et al.,                  )
                                                )        **REPORT AND RECOMMENDATION**
                        Defendants.             )        Docket ## 11, 17
                                                )

        This case is before the magistrate judge on referral.  Pending is the motion of

defendants Cuyahoga County ("the county") and David Zimmerman ("Zimmerman" or "the

prosecutor") to dismiss the complaint of plaintiff, Jeffrey Krotine ("Krotine"), pursuant to

Fed. R. Civ. P. 12(b)(6) ("R. 12(b)(6)") ("Def. mot. 1"; Docket #11).  Also pending is the

motion of defendants City of Brookpark ("Brookpark"), William Lambert ("Lambert"),

Timothy Robinson ("Robinson"), and James Foster ("Foster") (the individuals collectively

as "the officers") to dismiss the complaint pursuant to Fed. R. Civ. P. 12(c) ("R. 12(c)")

("Def. mot. 2"; Docket #17).  For the reasons given below the magistrate judge

recommends that the court dismiss without prejudice the state claims against Zimmerman

in his official capacity for lack of jurisdiction and otherwise grant defendants' motions and

dismiss with prejudice Krotine's remaining claims.

I.

The court reviews the facts, as it must, in the light most favorable to Krotine. Krotine alleges, or does not deny, the following facts.

Krotine's wife, Ramona Krotine ("R. Krotine"), was murdered on March 21, 2003, and her body was later found in the trunk of her Toyota at a rapid station. The Brookpark police investigated the murder and, despite a lack of physical evidence connecting Krotine to the crime, came to suspect him of having killed his wife.

A county grand jury indicted Krotine for murder on January 29, 2004. In accordance with county policy, the prosecutor selected those portions of the police reports he deemed relevant and shared them with the defendant by reading them aloud at a pre-trial conference. No record was made of what was read aloud, nor was the defense told what other documents were in the police reports that were not shared with the defendant. The prosecutor did not share with defendant the accounts of three witnesses, one of whom said he saw three men stuffing what could have been a body into the back seat of a Toyota-styled car at a hotel where R. Krotine had been staying, another who said that she heard a gunshot at the hotel the night Ramona disappeared, and a third who said he had information implicating someone other than Krotine in his wife's murder. The prosecutor also did not share any information collected in investigating the accounts of these witnesses, and the records of the officers do not include any investigation of these accounts.

Zimmerman worked closely with the officers during their investigation and advised the police regarding the investigation. Zimmerman and the officers all knew of the accounts of the three witnesses.

2

Krotine's first trial ended in a hung jury.  The county held a second trial at which the exculpatory evidence withheld at the first trial was again withheld from the plaintiff.  The second trial also ended in a hung jury.

A new prosecutor replaced Zimmerman on the case.  The new prosecutor shared the entire police file with Krotine; Krotine discovered the three exculpatory witness accounts and other potentially exculpatory evidence.  A third trial ended in a verdict of not guilty.

Krotine filed this action against the defendants May 26, 2007, alleging that defendants' actions individually and in conspiracy violated his rights to due process and a fair trial and that defendants' acts constituted intentional infliction of emotional distress. Krotine seeks monetary damages, a declaration that the methods used by Cuyahoga County to produce discovery are unconstitutional, and an injunction to end defendants' allegedly unconstitutional conduct.  Krotine sued all individual defendants in their individual and official capacities.  Defendants now move pursuant to R. 12(b)(6) and R. 12(c) to dismiss Krotine's complaint.

II.

The standards by which courts evaluate motions to dismiss pursuant to R. 12(b)(6) and motions for judgment on the pleadings pursuant to R. 12(c) are identical.  *Hughlett v. Romer-Sensky*, 497 F.3d 557, 561 (6th Cir. 2006) ("The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).") (quoting *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)).

In deciding a motion to dismiss pursuant to R. 12(b)(6), the court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most

3

favorable to the plaintiff. *Gausmann v. City of Ashland,* 926 F. Supp. 635, 638 (N.D. Ohio 1996) (citations omitted).  A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements") (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 at 596 (1969)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the complaint must be dismissed if it fails to allege or infer facts consistent with all material elements necessary to sustain recovery. *Bell Atlantic Corp. V. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1968-69 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

While the complaint must give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests, it need not set down in detail all the particularities of the claim. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994); *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993).  However, "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."  *Scheid*, 859 F.2d at 436 (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976), *cert. denied*, 431 U.S. 914 (1977)).

## III.  Jurisdiction

Although no party to this case has raised the issue of jurisdiction with regard to Krotine's claims, the court must raise that issue *sua sponte* with regard to two of his claims. As the Sixth Circuit observed in *Ku v. State of Tennessee*, 322 F.3d 431 (6th Cir. 2003):

4

A federal court's original jurisdiction is created by statute enacted under Article III, which functions as a fundamental limit on federal power. Because it is a fundamental "subject matter" limitation on federal judicial power, a defect in a federal court's original jurisdiction need not be asserted by any party, cannot be waived by any party, and must be raised by a Court **sua sponte** when noticed.

*Id.* at 433.

Krotine raises, *inter alia*, state causes of action for conspiracy and intentional infliction of emotional distress against Zimmerman in his official capacity and seeks monetary damages. Zimmerman, in his official capacity as prosecutor, is an agent of the state of Ohio:

The prosecuting attorney may inquire into the commission of crimes within the county. The prosecuting attorney shall prosecute, *on behalf of the state*, all complaints, suits, and controversies in which the state is a party, except for those required to be prosecuted by a special prosecutor pursuant to section 177.03 of the Revised Code or by the attorney general pursuant to section 109.83 of the Revised Code, and other suits, matters, and controversies that the prosecuting attorney is required to prosecute within or outside the county, in the probate court, court of common pleas, and court of appeals.

Ohio Rev. Code § 309.08(A) (emphasis added). The Sixth Circuit recognizes that prosecutors are agents of the state in Ohio:

[P]rosecutors are responsible for prosecuting state criminal charges. *See* Ohio Rev. Code §§ 1901.34(C), 309.08. Clearly, state criminal laws and state victim impact laws represent the policy of the state. Thus, a[n] official pursues her duties as a state agent when enforcing state law or policy. *Cf. Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992), *cert. denied,* 508 U.S. 942, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993); *Echols v. Parker,* 909 F.2d 795 (5th Cir.1990). Because [the prosecutor] acts as a state agent when prosecuting state criminal charges, the suit against [the prosecutor] in her official capacity is to be treated as a suit against the state.

*Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1994)

"It is well-established in Ohio that the state and its officers and employees are amenable to suit for money damages solely in the Ohio Court of Claims." *Martin v. Mengel*, 2005 WL 1693638, at *2 (Ohio App. July 21, 2005) (citing *Boggs v. State*, 8 Ohio St. 3d 15,

5

455 N.E.2d 1286 (1983) (holding that the Court of Claims has exclusive jurisdiction over claims against state employees)).  Ohio Rev. Code § 2743.03 provides in relevant part, "The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code . . . ."  A federal court does not have jurisdiction over state claims against a state official where the state has not waived immunity.  *Turker v. Ohio Dep't of Rehab. and Corrs.*, 157 F.3d 453, 456,-57 (6th Cir. 1998).

Because Krotine's state law claims against Zimmerman in his official capacity must be heard in the Ohio Court of Claims, the magistrate judge recommends that the court dismiss those claims for conspiracy and intentional infliction of emotional distress.

IV.

Krotine raises federal and state claims against Zimmerman in his individual and official capacities, against Cuyahoga County, against the officers in their individual and official capacities, and against Brookpark.  The court will examine each of the remaining claims separately.

A.    *Claims against Zimmerman in his individual capacity*

Krotine's complaint alleges four claims against Zimmerman in his individual capacity (1) violation of due process brought pursuant to § 1983[1] for withholding exculpatory

---

[1] Krotine's complaint does not cite any statute pursuant to which he is authorized to raise his claims that defendants violated his constitutional rights by withholding exculpatory evidence.  Krotine does, however, allege that the county's conduct violated the holding in *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978).  As that case involved claims brought pursuant to 42 U.S.C. § 1983 ("§ 1983"), the court presumes that Krotine is raising federal claims pursuant to that statute.

6

evidence before and during Krotine's first two trials; (2) violation of the right to a fair trial brought pursuant to § 1983 for withholding exculpatory evidence before and during Krotine's first two trials; (3) conspiring with other defendants to withhold exculpatory evidence, carrying out policies and practices that result in the withholding of exculpatory evidence, and training employees to carry out the forbidden policies and practices; and (4) intentional infliction of emotional distress brought pursuant to state law.  Krotine cannot prevail on any of these claims.

> 1.    *Alleged violations of due process and the right to a fair trial brought pursuant to § 1983*

Krotine's first two claims against Zimmerman allege that Zimmerman violated his rights to due process and a fair trial by knowingly failing to disclose exculpatory evidence before and during two trials.  Zimmerman responds that he is absolutely immune to suit in his individual capacity for his acts as a prosecutor.

Officials sued in their individual capacities pursuant to § 1983 may raise defenses against liability. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity protects public officials from liability when a reasonable person in the official's position would not have known that the alleged actions violated a person's constitutional rights.  *Id.* at 819. When a defendant official raises a defense of qualified immunity, a plaintiff must meet a three-part test to overcome that defense:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.

7

Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007) (quoting *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999)). Qualified immunity is granted a defendant if a plaintiff fails to meet any part of this test. *Meals*, 493 F.3d at 729.

In addition to qualified immunity, "some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993). In such a case, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). Relevant to this case, prosecutors performing functions "intimately associated with the judicial phase of the criminal process" are accorded absolute immunity in initiating and pursuing a criminal prosecution. *Buckley*, 509 U.S. at 269 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). This "functional approach" to determining whether a prosecutor's acts are protected by absolute immunity looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). Prosecutorial actions protected by absolute immunity include absolute immunity for the knowing suppression of evidence exculpatory to the accused. *See Imbler*, 424 U.S. 409.

Prosecutors are not entitled to absolute immunity, however, for acts taken in the performance of administrative or other functions unrelated to their role as advocate. For example, a prosecutor is not absolutely immune to liability for wrongful acts committed

8

when giving legal advice to police.  *Burns*, 500 U.S. at 492-95.  When making discretionary decisions unrelated to their role as advocates, prosecutors enjoy the same qualified immunity that protects other public officials.  *Id.* at 492-96.

Supreme Court precedent is clear on this point:  Zimmerman enjoys absolute immunity against claims brought pursuant to § 1983 for prosecutorial decisions, including the knowing suppression of evidence exculpatory to the accused.  *See Imbler*, 424 U.S. 409.  Zimmerman has no liability, therefore, for his failure to disclose exculpatory evidence to Krotine.

Krotine attempts to sidestep absolute prosecutorial immunity in two ways.  First, he argues in pl. opp. that Zimmerman's actions constitute malicious prosecution in violation of the Fourth Amendment.  Second, Krotine alleges that Zimmerman directed the investigation into the murder of R. Krotine and instructed officers not to investigate leads that might prove exculpatory to Krotine.  Krotine argues, therefore, that Zimmerman is not absolutely immune from liability for his wrongful acts committed in his role as investigator. This not only includes, according to Krotine, the knowing failure to investigate evidence potentially exculpatory to Krotine, but also includes liability for failing to turn over to Krotine exculpatory evidence discovered *as an investigator*.  Finally, Krotine argues that Zimmerman is also liable in his role as investigator for conspiring with the police to withhold exculpatory evidence from Krotine.

Krotine's claim for malicious prosecution fails for two reasons:  Krotine did not allege a claim for malicious prosecution in his complaint, and Krotine cites no caselaw that would support an action for malicious prosecution despite prosecutorial immunity under any facts

9

resembling those in the instant case.[2]  Either of these omissions suffices to defeat Krotine's claim for malicious prosecution against Zimmerman.

Krotine's argument that Zimmerman is potentially liable to him for his actions taken as an alleged investigator into R. Krotine's death also fails.  Whether Krotine learned of evidence exculpatory to Krotine in his role as an investigator or in his role as a prosecutor is beside the point.  The decision not to disclose evidence exculpatory to Krotine was a decision made in his prosecutorial role.  Krotine enjoys absolute immunity for that decision, therefore, regardless of when he learned of the potentially exculpatory evidence.[3]

_____

[2]  Krotine cites *Fox v. DeSoto*, 489 F.3d 227 (6th Cir. 2007), for the proposition that there *might* be a cause of action for malicious prosecution for wrongful investigation and prosecution applicable to Zimmerman.  In *Fox*, plaintiff filed an action against a police officer for Fox's prosecution.  The Sixth Circuit dismissed the action for failure to demonstrate that the officer participated in the decision to prosecute Fox and because a subsequent indictment created a presumption, never overcome, that there was probable cause to prosecute Fox.  The *Fox* case does not support a claim of liability for Zimmerman as a prosecutor or as an investigator in the instant case.  To the extent that Zimmerman made the decision to prosecute Krotine he had absolute immunity because he was acting in his prosecutorial role.  To the extent that Zimmerman's alleged acts as an investigator entitled him only to qualified immunity for those acts, Krotine's claim fails because Krotine was indicted for the murder of his wife.  It is black letter law that "an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry."  *State of Michigan v. Doran*, 439 U.S. 282, 296 n.6 (1978) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19 (1975)).  Krotine's complaint does not allege that his indictment was facially irregular or that the grand jury returning it was not properly constituted.  Thus, *Fox* does not support liability for Zimmerman either in his role as prosecutor or in his alleged role as investigator.

[3]  Krotine's citation of *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), for the proposition that a witness is liable for acts committed prior to his testimony despite testimonial immunity has no bearing on this case.  The witness in *Gregory* enjoyed immunity for his testimony as a witness but not for acts committed prior to testifying.  Zimmerman enjoys immunity as a prosecutor but not for acts committed outside that role.  Allegedly failing to disclose exculpatory evidence was done in the course of performing Zimmerman's prosecutorial role.

For these reasons the magistrate judge recommends that the court dismiss Krotine's federal causes of action against Zimmerman in his individual capacity.

## 2.    Alleged conspiracy

Krotine's claim that Zimmerman participated in a conspiracy to deprive him of his civil rights is also without merit.  Krotine's complaint alleges that defendants' joint conduct "in withholding exculpatory evidence, carrying out policies and practices that result in withholding exculpatory evidence, and in training employees to carry out these policies and practices, constitutes a conspiracy to deprive plaintiff of his civil rights, under federal and state law."  Complaint at 13-14.  Federal R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  A showing that one is entitled to relief necessarily includes reference to the law pursuant to which the pleader is authorized to bring the cause of action.  Krotine's complaint fails to cite any such federal law, and pl. opp. cites as authority for his federal claim a non-existent federal common law cause of action for conspiracy.[4]  Because Krotine fails to cite any law

---

[4]  Although federal common law causes of action have arisen since *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938), these have generally limited themselves to filling the interstices of peculiarly federal realms of law (ex. admiralty and Native American affairs) or to protecting federal interests against those of the states and private parties (ex. contract interpretation and the interpretation of state tax law).  There is no general federal common law cause of action, however, for conspiracy.  For a discussion of federal common law since *Erie*, see *Empire Healthchoice Assur., Inc. v. McVeigh*, ___ U.S. ___, 126 S.Ct. 2121, 2131-33 (2006); *Boyle v. United Technologies Corp.,* 487 U.S. 500, 507-508 (1988); and Friendly, *In Praise of Erie-and of the New Federal Common Law*, 39 N.Y.U. L. REV. 383, 409-410 (1964).  *See also City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197, 213-14 (2005); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725-34 (2004); *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 22-28 (2004); *United States v. City of Detroit*, 355 U.S. 466 (1958); *United States v. County of Allegheny,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); *Clearfield Trust Co. v. United States,* 318 U.S. 363 (1943);

authorizing a federal cause of action for conspiracy, that cause of action should be dismissed for failure to state a claim upon which relief can be granted.

Ohio does have a common law cause of action for conspiracy.  Its elements include "[1] a malicious combination [2] of two or more persons [3] to injure another in person or property, [4] in a way not competent for one alone, [5] resulting in actual damages."  *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419, 650 N.E.2d 863, 866 (1995) (quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645 (1987)).  "[A]n underlying unlawful act is required before a civil conspiracy claim can be successful."  *Gosden v. Louis*, 116 Ohio App. 3d 195, 219, 687 N.E.2d 481, 496 (1996) (citing *Minarik v. Nagy*, 8 Ohio App. 2d 194, 193 N.E.2d 280 (1963)).  "A 'conspiracy claim must be pled with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim.'"  *Jordan v. Murphy*, 145 Fed. Appx. 513, 520 (6th Cir. 2005) (quoting *Avery v. Rossford, Ohio Transp. Improv. Dist.*, 145 Ohio App. 3d 155, 762 N.E.2d 388, 395 (2001)).

Under Ohio law "prosecutors are . . . entitled to absolute immunity . . . when their activities are 'intimately associated with the judicial phase of the criminal process.'"  *Willitzer v. McCloud*, 6 Ohio St. 3d 447, 449, 453 N.E.2d 693, 695 (1983) (quoting *Imbler*, 424 U.S. at 430); *see also* Ohio Rev. Code § 2744.03(A)(7) (providing that a prosecutor is entitled to any defense allowed by common law against a civil action).  This includes absolute immunity in initiating a prosecution and conducting the state's case.  *Willitzer*, 6 Ohio St. 3d at 449, 453 N.E.2d at 695.  When a prosecutor functions as an investigator or an administrator, however, Ohio law provides only qualified immunity.  *Id.*

Krotine alleges that Zimmerman conspired to violate his civil rights both in his

conduct as a prosecutor and in his conduct as an investigator.  Because Zimmerman is absolutely immune under Ohio law from civil liability for those acts intimately associated with his role as a prosecutor, Zimmerman is not liable to Krotine pursuant to Ohio's common law action for civil conspiracy for the prosecutorial decision to not turn over to Krotine exculpatory evidence.  Krotine also alleges that as an investigator Zimmerman "worked closely with the police defendants in their investigation and in putting together a case against the plaintiff, and advised the police defendants on every stage of their investigation . . . ."  Complaint at 10.  Krotine contends that the police failed to focus on other suspects or develop leads that might have led to other suspects.[5]  These allegations are insufficient to allege an underlying wrongful act that would serve as a basis for liability for Zimmerman as a conspirator.[6]  Thus, Krotine fails to state a claim for conspiracy against Zimmerman under state law.  For these reasons the magistrate judge recommends that the court dismiss Krotine's claim for conspiracy against Zimmerman in his individual capacity.

   *3.     Alleged intentional infliction of emotional distress*

---

   [5]  The complaint alleges that the police "failed to make written notes or reports of information received and investigated that may have pointed to other suspects, so that said information could not be produced by police to the prosecutor's office and could not be produced by either the police or the prosecutor's office to defense counsel during discovery."  Complaint at 7.  However, the complaint later alleges that this was "the policy and custom of the City of Brookpark, through its police department, . . . so that neither the prosecutor nor defense counsel would have any way of knowing that certain exculpatory evidence exists."  *Id.* at 8.  As Krotine alleges that this was the policy and custom of the police defendants, Krotine cannot also allege that Zimmerman was responsible for this aspect of the allegedly improper investigation.

   [6]  Krotine fails to cite any Ohio law supporting a finding of liability for police officers or other investigators on these facts.  Moreover, to the extent that Krotine alleges that the conspirators attempted to violate his civil rights by withholding exculpatory evidence, Zimmerman is immune from liability by virtue of absolute immunity for his prosecutorial acts.

Krotine alleges that Zimmerman, individually and in concert with the other defendants, is liable to him for the intentional infliction of emotional distress.  Defendants deny that Zimmerman is liable to Krotine.

In Ohio a plaintiff asserting a cause of action for intentional infliction of emotional distress must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgmt., Inc.*, 71 Ohio St. 3d 408, 410, 644 N.E.2d 286, 289 (1994). Defendant intended the distress if the defendant "knew or should have known that actions taken would result in serious emotional distress to the plaintiff . . . ."  *Carlton v. Davisson*, 104 Ohio App.3d 636, 653, 662 N.E.2d 1112, 1123 (1995).  Recklessness as to whether the alleged conduct would cause plaintiff severe emotional distress is sufficient to prove that the conduct was intentional.  *Reamsnyder v. Jaskolski*, 10 Ohio St. 3d 150, 152, 462 N.E.2d 392, 394 (1984).  Defendant's conduct must be "so extreme and outrageous as to go 'beyond all possible bounds of decency'" and "be considered as 'utterly intolerable in a civilized community . . . .'"  *Id.*  The distress experienced by plaintiff must be serious and of a nature that no reasonable person could be expected to endure it.  *Id.*

Krotine's cause of action against Zimmerman fails because Krotine does not allege in his complaint that Zimmerman intended to cause him serious emotional distress, nor is it apparent from the acts alleged of Zimmerman as an investigator that he should have known that the alleged conduct would cause Krotine serious emotional distress.  Krotine having failed to allege a necessary element of the tort, he fails to state a claim upon which

14

relief should be granted.[7]

For the reasons given above the magistrate judge recommends that the court dismiss Krotine's claims against Zimmerman in his individual capacity for intentional infliction of emotional distress.

B.    *Federal claims against Zimmerman in his official capacity*

As indicated *supra*, Krotine's state claims against Zimmerman in his official capacity must be prosecuted in the Ohio Court of Claims.  This court, however, has jurisdiction over Krotine's federal claims against Zimmerman in his official capacity.

Federal claims against a state official in his official capacity are claims against the entity for whom the official is an agent.[8]  *Pusey*, 11 F.3d at 657 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  As already discussed Zimmerman, as prosecutor, is an agent of the state of Ohio, Ohio Rev. Code § 309.08(A), and a suit against him in his official capacity should be regarded by federal courts as a suit against the state, *Pusey*, 11 F.3d at 657.

---

[7] Even if Krotine had successfully pleaded intentional infliction of emotional distress, the claim would be unavailing against Zimmerman.  Zimmerman is absolutely immune for his acts as a prosecutor, including his decision to suppress allegedly exculpatory evidence, and Krotine has failed to allege acts committed by Zimmerman as an investigator sufficient to satisfy the requirement that the acts be extreme and outrageous.

[8] Krotine concedes in pl. opp. that Cuyahoga County is not a proper party to this suit, accepting def. mot. 1's representation that William D. Mason ("Mason"), the Prosecuting Attorney of Cuyahoga County, is Zimmerman's employer and controls the office of the prosecutor.  Krotine therefore asks the court to amend the complaint to substitute Mason for Cuyahoga County.  *See* pl. op. at 13.  This is not necessary, however. By suing Zimmerman in his official capacity, Krotine has stated all his claims against Mason.  Moreover, because Krotine concedes that Cuyahoga County is not a proper party to this suit, the magistrate judge recommends that the court grant def. mot. 1 as regards all claims against Cuyahoga County and dismiss that party from this action.

Federal claims brought pursuant to § 1983 are barred by the Eleventh Amendment. *Id.* at 658 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)).  For this reason Krotine's federal claims brought pursuant to § 1983 against Zimmerman in his official capacity must be dismissed.  The magistrate judge recommends, therefore, that the court dismiss Krotine's § 1983 claims against Zimmerman in his official capacity.

C.    *Claims against the officers in their individual capacity*

Krotine alleges that the defendant officers in their individual capacity  (1) violated his right to due process and his right to a fair trial by failing to record, investigate, or turn over to the prosecutor exculpatory evidence during their investigation of R. Krotine's murder to ensure that this evidence would not reach Krotine; (2) conspired with other defendants to withhold exculpatory evidence; and (3) intentionally inflicted serious emotional distress on Krotine.  The alleged violations of due process and the right to a fair trial are raised pursuant to § 1983; the allegations of conspiracy and intentional infliction of emotional distress are raised pursuant to state law.  Defendants deny that they are liable to Krotine.

1.    *Alleged violations of due process and the right to a fair trial pursuant to §*
      *1983*

Krotine contends that the defendant officers violated his rights to due process and a fair trial by failing to record, investigate, or turn over to the prosecutor exculpatory evidence during their investigation of R. Krotine's murder to ensure that this evidence would not reach Krotine.  In particular, Krotine alleges that the officers' conduct resulted in the following exculpatory evidence not being shared with Krotine:  (1) the existence and testimony of a witness who told police that he had witnessed three men stuffing something into the back seat of a Toyota-styled car at a hotel where R. Krotine had been staying, thus

undermining the police theory that R. Krotine had been killed at home; (2) a witness who said she heard a gunshot at the hotel the night Ramona disappeared; (3) a witness who told the police he had information implicating someone other than Krotine in his wife's murder; and (4) any investigatory follow-ups of the three witnesses' statements.

In *Brady v. State of Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  Both exculpatory evidence and impeachment evidence fall within the rule in *Brady*.  *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Undisclosed favorable evidence is material and due process is violated "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682.  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 682 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  However, if "the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence." *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988).  In sum, "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The *Brady* rule encompasses evidence "known only to police  investigators and not to the prosecutor."  *Kyles v. Whitley,* 514 U.S. 419, 438 (1995); *see also Strickler v.*

*Greene*, 527 U.S. 263, 280-81 (1999).  The defendant officers concede that they may be liable for violating the rule of *Brady* if they withhold exculpatory evidence from the prosecutor.  Def. mot. 2 at 1 (citing *Kyles*, 514 U.S. at 437).  Nevertheless, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf . . . , including the police," *id.*, and the prosecutor bears ultimate responsibility for disclosing material favorable evidence to the defense, *id.* at 437-38.

In the instant case, Krotine alleges the following related to the conduct of the defendant officers:

> 25.    By information and belief, it is the policy and custom of the City of Brook Park [sic], through its police department, to omit from its police reports and other written documents, some information which may tend to exculpate a criminal suspect and to omit said exculpatory information from its reports to the prosecutor, so that neither the prosecutor nor defense counsel would have any way of knowing that certain exculpatory evidence and information exists.
> 26.    The exculpatory evidence that defendants failed to disclose to plaintiff included the following:  [detailing the undisclosed evidence described above].
>
> *        *        *        *        *
>
> 27.    Although these witnesses gave information to the police, and although defendant police officers investigated the information given to them by these witnesses, this information was not given to plaintiff's defense attorneys prior to trial and there is no record in the Brook Park [sic] police reports of the results of these investigations and whether any other leads or suspects or witnesses were uncovered as a result of these investigations.
> 28.    By information and belief, defendant Zimmerman not only acted in his capacity as a prosecutor, but worked closely with the police defendants in their investigation and in putting together a case against plaintiff, and advised the police defendants on every stage of their investigation, going beyond his position as a prosecutor and acting in concert with the investigators.
> 29.    All of the defendants, acting in concert with one another, knew about the [undisclosed exculpatory evidence] and all defendants knew such evidence was exculpatory in that it tended to point to other possible suspects, and all defendants participated in withholding said exculpatory evidence from plaintiff and his attorneys prior to the first trial.
> 30.    The first trial resulted in a hung jury.
> 31.    A second trial was held, and the exculpatory evidence was withheld from plaintiff and his attorneys prior to and during the second trial, as well.

32.    The second trial resulted in a hung jury.
33.    After the second trial, defendant Cuyahoga County replaced defendant Zimmerman as prosecutor on the Krotine case with Steven Dever.
34.    Prior to the third trial, Mr. Dever provided plaintiff's defense counsel with access to all police reports and other discovery materials not normally produced to defense attorneys.
35.    In studying the 900 pages of police reports and other discovery materials given to plaintiff's attorneys, plaintiff's attorneys discovered the above-referenced exculpatory evidence as well as other arguably exculpatory evidence that was previously withheld, evidence which should have been produced prior to the first trial.
36.    On May 27, 2005, as a result of having access to, and being able to utilize at trial the exculpatory evidence which pointed to the possibility of other suspects, plaintiff was acquitted after a third trial.

Complaint at 9-11 (punctuation in the original).

Although Krotine asserts that the officers withheld information from the prosecutor, the only exculpatory information he cites as having been withheld from him is information that the police shared with the prosecutor.  He asserts that all defendants, including the prosecutor, knew of the withheld exculpatory information and that the exculpatory information was in the prosecutor's files.  Krotine cites no caselaw to support the proposition that police commit a *Brady* violation despite having shared exculpatory information with the prosecutor.  As Krotine has not alleged that the officers failed to turn exculpatory evidence over to the prosecutor and cites no law that would support liability for the conduct he does allege of the officers, the magistrate judge recommends that the court dismiss Krotine's claims raised pursuant to § 1983 against the defendant officers in their individual capacities.

        2.    *Alleged conspiracy*

Krotine's claim that the officers participated in a conspiracy to deprive him of his civil rights is also without merit.  Krotine's complaint alleges that defendants' joint conduct "in

withholding exculpatory evidence, carrying out policies and practices that result in withholding exculpatory evidence, and in training employees to carry out these policies and practices, constitutes a conspiracy to deprive plaintiff of his civil rights, under federal and state law." Complaint at 13-14. As had already been shown, however, Krotine does not allege that the officers withheld exculpatory evidence from the prosecutor. Indeed, Krotine does not allege that the officers committed *any* act in furtherance of the alleged conspiracy. The only act that Krotine attributes to the conspiracy was the failure of the prosecutor to turn over exculpatory evidence in the prosecutor's possession. The only individual who had the authority and responsibility to turn over that evidence was the prosecutor himself. Krotine does not explain how the officers could have been part of a conspiracy to injure him if they committed no overt act in furtherance of the conspiracy and the only act alleged to have injured him was one in which they could not have participated.

The allegations against the officers fail to plead with specificity the nature of their participation in the conspiracy and fail to allege material facts that would permit a jury to find that they were members of the alleged conspiracy. Such allegations are not sufficient to state a claim of conspiracy. *Jordan*, 145 Fed. Appx. at 520. For these reasons the magistrate judge recommends that the court dismiss Krotine's cause of action for conspiracy against the officers in their individual capacities.

3.  *Alleged intentional infliction of emotional distress*

Krotine argues that defendant officers individually and in concert with the prosecutor intentionally caused him emotional distress by withholding exculpatory evidence from him in violation of his rights under federal and state law. The officers deny that they are liable to Krotine for intentional infliction of emotional distress. Ohio law on intentional infliction

20

of emotional distress has been set forth above.

Krotine's cause of action against the officers for intentional infliction of emotional distress fails because he does not allege that they engaged in any conduct that resulted in his injury.  As already discussed, the officers did not withhold exculpatory evidence from the prosecutor, committed no overt act in furtherance of the conspiracy, and the only act alleged to have injured him was one in which they could not have participated.  Because Krotine alleges no conduct that injured him on the part of the officers, he cannot prove that the officers' conduct was the proximate cause of his injuries.  For this reason the magistrate judge recommends that the court dismiss Krotine's cause of action for intentional infliction of emotional distress against the officers in their individual capacities.

D.    *Claims against the officers in their official capacity and against Brookpark*

Krotine also alleges that the defendant officers in their official capacity  and Brookpark (1) violated his right to due process and his right to a fair trial by failing to record, investigate, or turn over to the prosecutor exculpatory evidence during their investigation of R. Krotine's murder to ensure that this evidence would not reach Krotine; (2) conspired with other defendants to withhold exculpatory evidence; and (3) intentionally inflicted serious emotional distress on Krotine.  The alleged violations of due process and the right to a fair trial are raised pursuant to § 1983; the allegations of conspiracy and intentional infliction of emotional distress are raised pursuant to state law.  Defendants deny that they are liable to Krotine.

1.    *Alleged violations of due process and the right to a fair trial pursuant to §*
       *1983*

To establish a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that:

21

(1) the defendant deprived the decedent of a right secured by the Constitution or laws of the United States; (2) the defendants caused such a deprivation while acting under color of state law, and (3) the deprivation occurred without due process of law. *See, e.g., O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994).

Krotine alleges that the officers in their official capacities deprived him of his right to due process and a fair trial.  Official capacity suits are construed as brought against the entity itself, because a judgment against an official in his official capacity imposes liability on the entity he represents. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Pusey*, 11 F.3d at 657.  Krotine's cause of action pursuant to § 1983 against the officers in their official capacities, therefore, is absorbed into his suit against Brookpark

A § 1983 claim against a municipality cannot be based solely on an employee's conduct, as respondeat superior is not available as a theory of recovery under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Rather, Krotine must show that the municipality itself is the wrongdoer.  *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996).  Municipalities can be held liable only where a plaintiff can establish that "an officially executed policy, or the toleration of a custom" within the municipality caused the deprivation of a constitutionally protected right.  *Doe*, 103 F.3d at 507, citing *Monell*, 436 U.S. at 690-91.

Krotine's causes of action pursuant to § 1983 against Brookpark fail because he does not allege that Brookpark pursued a policy that deprived him of a constitutionally-protected right.  Krotine alleges the following regarding the conduct of Brookpark:

46.     The conduct of . . . Brook Park, in carrying out policies and practices that resulted in the withholding of exculpatory evidence from plaintiff and his criminal defense attorneys before and during the first two criminal trials of plaintiff, and in

22

> training their employees to adhere to and carry out these policies and practices,
> constitute unlawful policies and practices, in violation of *Monell* . . . .
> 47.      As a direct result of the conduct of the defendants, plaintiff has suffered and
> continues to suffer economic damages, reputational damages and emotional
> distress.

Complaint at 13.  Krotine does not allege, however, that Brookpark's police withheld

exculpatory evidence from the prosecutor, and sole responsibility for withholding the

exculpatory evidence alleged to have damaged Krotine rests with the prosecutor himself.

Thus, whether Brookpark has a policy of training employees to withhold exculpatory

evidence is irrelevant to this case, as Krotine does not allege that he was harmed by that

policy.  Because Krotine does not allege that Brookpark's policies deprived him of a

constitutionally-protected right, he cannot prevail on his causes of action pursuant to §

1983.  For these reasons the magistrate judge recommends that the court dismiss Krotine's

cause of action pursuant to § 1983 against the officers in their official capacities and

against Brookpark.

### 2.  State causes of action for conspiracy and intentional infliction of emotional distress

As with Krotine's federal claims, Krotine's state claims against the officers in their

official capacities are treated as a suit against the political subdivision in whose name they

act.  *See, e.g., Carpenter v. Scherer-Mountain Ins. Agency*, 135 Ohio App. 3d 316, 330,

733 N.E.2d 1196, 1206 (1999), and *Hiles v. Franklin Bd. of Commrs.*, 2005 WL 3557454,

at *10 (Ohio App. Jan. 5, 2006).  Thus, Krotine's state claims against the officers in their

official capacities are absorbed into his state claims against Brookpark.

The state claims against Brookpark must be dismissed for the same reasons that

Krotine's state claims against the officers in their individual capacities and the federal claim

against Brookpark must be dismissed:  Krotine does not allege that any acts attributable to the officers or to Brookpark injured him.  As had already been shown, the officers took no action in furtherance of the alleged conspiracy and cannot be held responsible for the prosecutor's decision to withhold evidence.  Brookpark cannot, therefore, be held liable for a conspiracy against Krotine based on the conduct of its officers.  Krotine also does not allege any conduct committed by the officers which might serve as a basis for a claim of intentional infliction of emotional distress.  Finally, Brookpark's alleged policy of withholding exculpatory evidence did not injure Krotine because Brookpark's officers did not withhold from the prosecutor any of the exculpatory evidence at issue in this case.  Because Krotine does not allege facts to show that the acts of Brookpark's officers or Brookpark's policies injured him, Krotine cannot prevail on his state cause of action against Brookpark for intentional infliction of emotional distress.   For these reasons the magistrate judge recommends that the court dismiss Krotine's state causes of action against the officers in their official capacities and against Brookpark.

V.

For the above reasons the magistrate judge recommends that the court dismiss without prejudice the state claims against Zimmerman in his official capacity for lack of jurisdiction and otherwise grant defendants' motions and dismiss with prejudice Krotine's remaining claims.


Dated:  November 12, 2007                    /s/Patricia A. Hemann
                                             Patricia A. Hemann
                                             United States Magistrate Judge

**OBJECTIONS**

24

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).